IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SALVATORE PALMA, JR., individually and as administrator of the Estate of Palma Dominic Palma, *et al.* | : : : : | CASE NO. 1:18CV00294 |
| Plaintiffs, | : : | JUDGE DAN AARON POLSTER |
| | : : | **PLAINTIFFS' TRIAL BRIEF** |
| vs. | : : : | |
| DEPUTY MATTHEW JOHNS, *et al.*, | : : | |
| Defendants. | : | |

Now come Plaintiffs, by and through counsel, and for their Trial Brief state as follows:

## I.   STATEMENT OF FACTS

On February 8, 2017, Vincent Palma was shot nine (9) times in the yard of his home by Deputy Matthew Johns. On that date, Deputy Johns received a call from dispatch advising that there was a call pending at 4394 South Ridge Road, Geneva Township. Prior to his arrival, Deputy Johns, was advised that there was an unwanted subject at that location who was "76", which is an indication that the individual has mental health issues. Police were originally contacted by Melissa Palma, Vincent's step-mother. There was a sibling dispute at the Palmas' residence between Vincent and his sister over a television remote. It was Melissa Palma's intention to have law enforcement take Vincent to the hospital for potential mental health services when she called 9-1-1.

Upon arrival, Deputy Johns drove into the Palmas' driveway, approximately 40 to 50 feet from the front of the house. Deputy Johns parked the vehicle and observed Vincent standing outside on the steps of the front porch. Deputy Johns exited his cruiser and walked toward the house, approximately ten to fifteen feet from his cruiser. Vincent began walking down the stairs of the porch as Deputy Johns began walking toward him. At this point in the encounter, Deputy Johns was 20 to 25 feet away from Appellant.

Salvatore Palma, Jr. and Melissa Palma were outside when Deputy Johns arrived at their home and observed Vincent walking down the front stairs and toward the driver's side of Deputy Johns' cruiser. Melissa Palma advised that Vincent was unarmed. During Vincent's encounter with Deputy Johns, Vincent did not make any verbal statements to Deputy Johns. At that point during the encounter, Deputy Johns did not observe a weapon. From across the hood of Deputy Johns' cruiser, and after hearing no response to his request to stop walking, Deputy Johns tased Vincent. As a result of the taser applications, Vincent landed in a puddle, in the corner of the yard. When Vincent fell to the ground after being tased, Vincent was positioned on his left side. There is no evidence that a weapon was observed at that time.

After Vincent was tased and fell to the ground, he got up and started going back to the house. Deputy Johns grabbed his baton and raised it over his head as if he was going to swing it at Vincent, but alleges he did not use it because Vincent turned away from him. Melissa and Salvatore observed that Vincent turned away from Deputy Johns to walk to the house.

Next, Deputy Johns unholstered his firearm and began to walk backward across the driveway and yard of the Palmas' property. Both Deputy Johns and Vincent continued to walk across the yard with a "ten-foot plus" gap in between them the entire time. Vincent continued to walk at the same "walking" pace throughout the entire encounter. During the time Vincent and

2

Deputy Johns were walking, Vincent did not lunge at Deputy Johns or make any verbal threats to Deputy Johns.

According to Deputy Johns, he unholstered his firearm and pointed it at Vincent as they were walking. As Deputy Johns and Vincent proceeded toward the middle of the yard, if at any time Deputy Johns stopped walking, Vincent would also stop walking. Despite the fact that Vincent had not reached out, lunged at, or made any threats, verbal or otherwise to Deputy Johns, Deputy Johns fired the first shot at Vincent. Melissa Palma testified that at the time Vincent was shot, both Vincent and Deputy Johns were stopped. Deputy Johns fired additional shots at Vincent. During the shooting, Vincent fell to the ground and Depuy Johns continued shooting him. No weapons were ever recovered, confirming that Vincent was unarmed throughout the encounter.

The Autopsy Report indicates that Vincent was shot nine (9) times. Of the nine (9) gunshot wounds, the direction of four (4) of the gunshots were downward. The projectile direction suggests that Vincent was on the ground when at least four (4) of the shots were fired and struck him. Thus, it is reasonable for one to conclude that Vincent was in a fetal position, on his hands and knees, or crawling when he was shot by Deputy Johns. The wound path analysis indicates that many of the gunshot wounds could have occurred while Vincent was on the ground or attempting to get back up after collapsing to the ground. Further, the large number of ground impacts and projectiles in the area of the shooting, are indicative of the shooter firing at a target individual who is not changing location to any significant extent.

It is the position of the Plaintiffs that Deputy Johns used excessive force against Vincent Palma during the encounter, violating his constitutional rights. It is the further position of Plaintiffs that Deputy Johns caused the wrongful death of Vincent Palma.

## II. SYNOPSIS OF APPLICABLE LAW

A. Excessive Force – 42 U.S.C. § 1983

Plaintiffs' amended complaint sets forth a 42 U.S.C. § 1983 claim "imposes civil liability on those individuals who, acting under color of state law, deprive a citizen of, among other things, his federally guaranteed constitutional rights." *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015). For this claim, Plaintiffs acknowledge that they must set forth facts that, when favorably construed, establish: (1) the deprivation of a right secured by the Constitution or laws of the United States; (2) caused by a person acting under the color of state law. *Id*. (citing *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir.2006)).

Plaintiffs submit that Deputy Johns deprived Vincent Palma of his right to be free from unreasonable seizure by subjecting him to the unjustified use of deadly force in violation of the Fourth and Fourteenth Amendments of the United States Constitution. Section § 1983, the federal civil rights statute under which Plaintiff Palma sues, provides that a person may seek relief in this court by way of damages against any person or persons who, under color of any state law or custom, subjects such person to the deprivation of any rights, privileges, or immunities secured or protected by the constitution or law of the United States. Authority: Hon. Edward J. Devitt, et al., Federal Jury Practice and Instructions (West) §165:10 – Generally. Plaintiffs allege, and the record reflects, that Defendant Johns applied to Mr. Palma, an unreasonable and unnecessary use of force when he shot and killed Mr. Palma.

The right to be free of the use of excessive force is also clearly established as it applies to taser use. The Sixth Circuit recognized in *Brown v. Chapman* that "an individual's right to be free from a taser is clearly established when the individual is not actively resisting arrest or is already detained." *Brown v. Chapman*, No. 15-3506, 2016 WL 683260 at *461 (6th Cir. Feb. 19,

4

2016)(collecting cases: *Thomas v. Plummer*, 489 Fed.Appx. 116, 126–29 (6th Cir.2012) (concluding that, as of 2009, an officer's use of a taser on a once-disobedient suspect who had stopped resisting violated clearly established law*); Kijowski v. City of Niles*, 372 Fed.Appx. 595, 600–01 (6th Cir.2010) (holding that officers violated clearly established rights when they dragged an unresisting man from his truck and tasered him); *Landis v. Baker*, 297 Fed.Appx. 453, 461–64 (6th Cir.2008) (finding that officers violated clearly established law by tasering a suspect who had previously grabbed a police officer but had since released him and was "no longer a threat to any of the officers" as he was "not belligerent or verbally resistant" and did not have a weapon)).Plaintiffs believe the evidence will show that Deputy Johns also violated clearly established law by tasering Mr. Palma when he was not a threat to the officer and did not have a weapon.

    B. <u>State Law Claim for Wrongful Death</u>

Plaintiff has additionally raised a state law claims against Defendants for the wrongful death of Vincent Palma. Plaintiffs argue that Deputy Johns failed to exercise due care and acted in a willful and wanton and reckless manner while engaged in law enforcement functions and activities which culminated in the death of Vincent Palma. The Ohio Political Subdivision Tort Liability Act, Ohio Revised Code §2744 permits tort actions against municipal employees for actions taken with "malicious purpose, in bad faith, or in a wanton or reckless manner." Ohio Rev. Code § 2744.03(A)(6)(b). The Ohio Supreme Court finds recklessness when the actors are "conscious that [their] conduct [would] in all probability result in injury." *A.J.R. v. Lute*, 2020-Ohio-5168, 168 N.E.3d 1157, 1162. "Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Lute*, 1161 (citing *Anderson v.*

5

*Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, paragraph four of the syllabus). Defendants are not protected by Ohio state law immunity for their conduct in tasing and shooting Mr. Palma, and Plaintiffs will submit jury instructions defining these elements. As the foregoing Summary of Facts demonstrates, Deputy Johns was aware that his actions were likely to, and did, result in injury to Mr. Palma when he used excessive force during their encounter.

### III.     EVIDENTIARY ISSUES

As a general matter, and as described above, the question for the jury in a Section § 1983 case alleging excessive force is whether Defendant engaged in objectively unreasonable conduct when he tased and shot Vincent Palma on February 8, 2017. Further, as described above, Plaintiffs also raise the state law claim of wrongful death. Plaintiffs have raised and briefed multiple evidentiary issues in their Motions in Limine. Plaintiffs reiterate the evidentiary issues below, renewing certain Motions in Limine (several that remain outstanding with the court) and offering several new Motions in Limine.

#### A. Any Potential Prior Bad Acts Evidence Is Not Probative of Plaintiff Vincent Palma's Knowledge or Intent on February 8, 2017

Plaintiff renews this Motion as the Court has reserved ruling on same. In response to the Order of this Court, the parties provided additional briefing on this issue via email to the Court.

Plaintiffs submit that any evidence of prior bad acts must be excluded at trial as there is no permissible purpose pursuant to Federal Rule of Evidence 404(b). The purpose of Rule 404(b) is to prevent a jury from "convict[ing] a 'bad man' who deserves to be punished not because he is guilty of the crime charged but because of his prior or subsequent misdeeds" and from "infer[ing] that because the accused committed other crimes, he probably committed the crime charged." *United States v. Emmons*, 8 F.4th 454, 473 (6th Cir. 2021) (citing *United States v. Phillips*, 599 F.2d 134, 136 (6th Cir. 1979)). Evidence that would be inadmissible solely for purposes of

6

demonstrating conformity with a character trait may be independently permissible for another 404(b) purpose; however, the admissibility of prior bad act evidence must be carefully analyzed to avoid subsuming the protections of Rule 404(b) in their entirety. In order to be relevant as "other acts" evidence, "the purpose for which the evidence is offered [must be] material or 'in issue.'" *United States v. Emmons*, 8 F.4th 454, 474 (6th Cir. 2021). Certain prior bad act evidence becomes relevant only if it requires the jury to first conclude that the defendant likely acted in conformity with the bad character trait in the present instance. Such evidence runs afoul of Rule 404(b), and should not be presented to the jury.

Plaintiff submits that in this case any prior bad acts as it relates to Vincent Palma are not relevant and serve no permissible purpose.

**B. References or Mentions of Prior Pleadings, Claims, or Dismissed Parties.**

The amendment of the pleadings, claims, or dismissal of parties are irrelevant to issues the jury will be asked to decide in this case.

**C. References or Mentions by Deputy Johns' that he was justified in shooting/tasing Palma.**

Plaintiff renews this Motion and asks the Court to reconsider its decision permitting Defendant Johns to testify whether he was justified in tasing and/or shooting Mr. Palma. This testimony should be excluded under Federal Rules of Evidence 402 and 403. Under the Fourth Amendment, an officer's subjective opinions are irrelevant. Rather, objective facts are what matters. The substantial weight of Fourth Amendment jurisprudence consistently concludes that Fourth Amendment violations cannot be predicated on an officer's subjective beliefs or opinions as to what the officer thought or believed a suspect might do. Consequently, courts analyze an officer's use of force by asking whether it was "objectively reasonable" in light of the actual facts and circumstances confronting the officer, without regard to the officer's beliefs or underlying

7

intent. *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1220 (10th Cir. 2005). Accordingly, Deputy Johns' subjective beliefs are irrelevant, potentially prejudicial, and should be excluded.

**D. Contributory Fault Should not be Argued or Presented.**

The Plaintiff acknowledges that this issue was deemed moot by the Court in based on Defendants' agreement in open court that no testimony or argument would be made suggesting contributory fault. However, it has become clear through further discovery that Defendants will likely attempt to introduce evidence that Palma was contributorily negligent based on alleged attempts on his part to commit suicide by cop. In light of this position, Plaintiffs renew their Motion and as the Court to preclude any argument regarding the comparison of any fault of plaintiffs or any other non-party. Comparative fault principles to not apply in 1983 civil rights actions and would serve to confuse the issues in this matter. *Quezada v. County of Bernalillo*, 944 F.2d 710, 720 (10th Cir. 1991).

**E. Conclusions and Opinions of Ohio Attorney General's Office.**

Plaintiffs renew this motion to the extent that it does not appear clear from the Court's prior Order that a final decision on this issue was made.

Defendants may attempt to introduce evidence that the Ohio Attorney General's Office chose not to prosecute Deputy Johns for the purpose of swaying the jury's opinion regarding Deputy Johns' use of lethal force. However, such evidence should not be allowed because it is irrelevant to whether Deputy Johns violated Mr. Palma's Constitutional rights. Moreover, this evidence would improperly sway the jury's opinion by suggesting that because no criminal charges were brought, Deputy Johns used the proper amount of force. In another excessive force case, the court found that the District Attorney's decision not to file homicide charges against the police officer was "only marginally relevant, if relevant at all, while the risk of jury confusion [was]

8

significant." See *Real v. City of Long Beach*, No. CV 14-02831-MWF, 2015 WL 12745790, at *3 (C.D. Cal. Sept. 18, 2015). Similarly, any analysis or decision by BCI or the Ohio Attorney General is irrelevant, unduly prejudicial and confusing to the jury.

### F. Social Media Posts and Messages

Defendants should be precluded from introducing any social media posts and messages of both Vincent Palma and Alicia Palma. Plaintiffs respectfully submit that the introduction of such posts and/or messages are not relevant and constitute hearsay and/or speculation.

### G. Testimony or suggestions that Vincent Palma was suicidal or was committing suicide by cop.

Defendants should be precluded from referencing or offering any testimony that suggests that Vincent Palma was suicidal or committed "suicide by cop". Most importantly, Defendant has no expert witness to opine that Vincent Palma was committing suicide by cop. See *Boyd v. City and County of San* Francisco, 576 F.3d 938 (9th Cir. 2009). Furthermore, any suggestions that he was suicidal are speculative at best and not relevant. Speculation about whether Palma was suicidal does not play any role in determining whether Defendant Johns utilized excessive force when shooting and killing Palma.

### IV. PLAINTIFF'S WITNESS LIST

1. Melissa Palma
2. Salvatore Palma, Jr.
3. Alisha Palma
4. Angela Futch
5. Deputy Matthew Johns, in case in chief, as if on Cross Examination.
6. Ron Martinelli, Plaintiff's Expert Witness
7. Lance T. Martini, Plaintiff's Expert Witness

9

8. Scott Roder, Evidence Room

9. Pat Mooney, Evidence Room

10. Amanda Foit-Francois

11. James Longer

12. Brain Abbott

13. Dep. Jay Thomas

14. Sheriff William Niemi

15. Det. Brian Rose

16. Det. Leonhard

17. Lt. T. Moisio

18. Dep. Taylor Cleveland

19. Dep. Ted Barger

20. Dep. Jason Francis

21. Dep. Evan Wolff

22. Sheriff William Johnson

23. Dale Arkenburg

24. Officer Shawn Gonzalez

25. Chief Tim Bruckman

26. Officer Joseph Webb

27. Officer James Arnold

28. Special Agent Cory Momchilov

29. Special Agent Lindsay Mussell

30. Special Agent Moran

31. Brad Loudermilk

32. Rob Bernardo

33. Ben Gruber

34. Ashley Row

35. Dr. Kevin Andryc

36. Mary Henning

37. Janie Laine

38. Heather Rice

39. Cameron Platt

40. Riley Platt

41. Henry Gawrys

42. Daniel Hearn

43. Anne M. Cahill, RN

44. Rebecca M. Kisan, RN

45. Rita E. Ledyard, RN

46. Jonathan M. Moldovan

47. Nathaniel McQuay

48. Jacob Podleski

49. Edmundo Reyes Mandac

50. Matthew Krock

51. Dr. David Dolinak

52. Keith King

53. Any and all witnesses called by any Defendants, on Cross-Examination

54. Plaintiffs reserve the right to name and call rebuttal witnesses whose testimony could not have been reasonably anticipated

55. Plaintiffs reserve the right to amend this witness list

## V.     PLAINTIFF'S EXHIBITS LIST

1. Ashtabula County Sheriff's Report of February 8, 2017, including photographs

2. Geneva-on-the-Lake Police Report for February 8, 2017, including photographs

3. Geneve Police Department Report for February 8, 2017

4. 911 call for February 8, 2017- transcript and recordings

5. Dispatch logs for February 8, 2017

6. Radio traffic for February 8, 2017

7. Ambulance Repost for February 8, 2017- UH Genevea and from Geneva to UH Cleveland

8. University Hospital Geneve records for February 8, 2017

9. University Hospital Cleveland for February 8, 2017

10. Drone photographs taken of the area of the incident

11. BCI Report including diagram of the area showing location of taser cartridges and shots fired, including "Total Station" prepared by BCI of the area

12. Any and all audio recordings obtained from BCI as part of their investigation

13. Additional BCI photographs and diagrams

14. Map Photo of Yard

15. Use of Force Policy of the Ashtabula County Sheriff's Department

16. Protecting Ohio's Families: a law enforcement guide. The Ohio Attorney General Peace Officer Training Academy. (ohioattorneygeneral.com\Ohio-Peace-Officer-Training: Policing in the 21st Century Resource Guide)

17. Ashtabula County Sheriff's Report of January 20, 2017

18. 911 Call- January 20, 2017

19. Dispatch Records- January 20, 2017

20. Personnel file of Matthew Johns

21. Autopsy Report including photographs

22. Death Certificate of Vincent Palma

23. Animation of the February 8, 2017, including body impact images and ground map

24. Body cam footage of Geneva-on-the-lake Police Officer

25. Keith King Photos of the yard

26. Family photographs of Vincent Palma and DVD from Funeral

27. Funeral Bill for Vincent Palma

28. Medical Bills for treatment to Vincent Palma

29. List of Attorney Fees

/s/ Richard J. Perez

RICHARD J. PEREZ, Esq.
Counsel for Plaintiff

/s/Michael J. Lerner

MICHAEL J. LERNER, Esq.
Counsel for Plaintiff

/s/ Leslie S. Johns

LESLIE S. JOHNS, Esq.
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

      A copy of the foregoing Plaintiff's Trial Brief has been filed electronically with the Court on this 7th day of November, 2023. Notice of this filing will be sent to the parties by operation of the Court's electronic filing system.

/s/ Richard J. Perez
_____
RICHARD J. PEREZ, Esq.
Counsel for Plaintiff

/s/Michael J. Lerner
_____
MICHAEL J. LERNER, Esq.
Counsel for Plaintiff

/s/ Leslie S. Johns
_____
LESLIE S. JOHNS, Esq.
Counsel for Plaintiff